[No. 14609. Department One. — August 5, 1892.]

## CHARLES H. DUNTON, Respondent, *v.* WILLIAM NILES, Appellant.

Excavation by Coterminous Owner of Land — Fall of Adjoining Building — Breach of Agreement to Pay Damages — Pleading — Demurrer. — A complaint alleging that the defendant commenced to excavate upon a lot adjoining premises occupied by plaintiff's assignors as a warehouse; that upon a notification that the excavation, if continued, would undermine the warehouse and damage the goods of the occupants, the defendant promised to stop the work of excavating and discontinue the same, but notwithstanding his promise, continued to excavate in a negligent, unskillful, and careless manner, and carried away the earth from under the warehouse, causing the floor of the warehouse to fall through, together with the goods stored therein, whereby the goods were greatly damaged; that thereupon a settlement of the damages was demanded, which the defendant promised to pay as soon as the damages should be fully ascertained; that afterwards a compromise was agreed upon, whereby the defendant was to take certain tin plate at a stipulated price, and was to take away certain rivets, sort them over, and return the undamaged ones, and to pay all damage for

the rivets not returned; that the tin plate and rivets had been delivered to the defendant previous to the agreement, but that some of the rivets which were to be sorted and returned were so unskillfully sorted that the firm refused to receive them, and that the residue had never been sorted or returned, and that the firm were damaged thereby in a certain sum, but that the defendant had failed to pay any part of the damages, — states a cause of action for the breach of the agreement to pay for the goods delivered and the damages caused by the excavation, and is not demurrable, upon the ground of uncertainty, or that several causes of action are improperly united.

ID. — MATTER OF INDUCEMENT — UNCERTAINTY OF PLEADING. — The action is for breach of the oral agreement to pay what damages were agreed for excavating and removing the earth from under the warehouse and causing it to fall, and not merely for excavating upon the adjoining lot, and the previous recitals are of matter of inducement, and do not render the complaint uncertain.

ID. — AGREEMENT OF COMPROMISE — DISTINCT ITEMS — JOINDER OF CAUSES. — The fact that the agreement of compromise specifies several distinct items or payments to be made does not make them different causes of action, nor render the complaint demurrable for misjoinder of causes.

ID. — CONTRACT TO PAY DAMAGE — CONSIDERATION. — It is a sufficient consideration for the promise of the defendant to pay to the tenants of the warehouse the damage caused by the excavation that the owner of the warehouse authorized the defendant to erect a wall on the line for a party-wall, and that it was necessary for the defendant to dig under the warehouse and remove one of its walls, thereby causing the damage agreed to be paid.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion.

*Chapman & Hendrick,* for Appellant.

*Brousseau & Hatch,* and *Waldo M. York,* for Respondent.

TEMPLE, C. — Plaintiff, as assignee of W. W. Montague & Co., sues to recover damages for the breach of an alleged contract whereby defendant agreed to settle and pay to W. W. Montague & Co. certain damages to their goods, wares, and merchandise, caused by an excavation made by defendant adjoining and under their warehouse at Los Angeles, and also for certain tin sold and delivered to defendant.

The complaint is demurred to, — 1. Generally, for in-

sufficient facts; 2. Uncertainty, in that it cannot be ascertained from it whether the action is brought to recover damages for the negligent excavation of the land adjoining the warehouse, or upon a contract to pay such damage, and a contract to pay for certain tin plate, or whether it is brought to recover the value of certain rivets taken by the defendant and not returned; 3. Several causes of action are improperly united, to wit, a cause of action for damages for negligence and unskillfulness in excavating adjoining the property of W. W. Montague & Co. with an action upon a contract to pay such damage; and said two causes of action with an action upon a contract to pay for tin plate, and for labor in sorting and boxing rivets, and all of said causes of action, and each of them, are improperly united with an action for damages for failure to sort certain other rivets; and further, that said several causes of action are not separately stated.

The complaint charges that on the first day of October, 1884, W. W. Montague & Co. rented from one Mills the premises known as 110 Upper Main Street, and lands adjoining thereto, for two years, with the privilege of an extension of two years; that Mills, in pursuance of the covenants of the lease, built a warehouse on the premises, which W. W. Montague & Co. took possession of, and where they stored a large amount of merchandise. The firm continued to occupy the premises until July, 1887. While W. W. Montague & Co. were so in the possession, defendant purchased the adjoining land from Mills, well knowing the rights of W. W. Montague & Co.

While the lessees were so occupying the premises, defendant commenced to excavate upon the adjoining lot purchased by him from Mills, and continued so to excavate up to May 28, 1887. May 25, 1887, W. W. Montague & Co. notified defendant that his excavation, if continued, would undermine their warehouse and damage their goods, and defendant then promised " that he would stop his said work of excavating and discontinue the same, but notwithstanding his said promise so to dis-

continue said work, said defendant continued to excavate in a negligent, unskillful, and careless manner, and in so excavating took and carried away the earth and soil from said land so as aforesaid acquired by him, defendant, from said Mills and his grantees, and next and adjoining said property, . . . . and negligently and unskillfully carried away the earth and soil from under said warehouse, until the defendant had excavated to a depth of sixteen feet below the ancient surface of defendant's said land, and below and under said warehouse, and was so carelessly and negligently excavating on the twenty-eighth day of May, 1887, when, by reason of said excavation so as aforesaid carelessly and negligently made by defendant under said warehouse and on said lands adjoining thereto, the earth and soil under said warehouse gave way and fell into said excavation, and the floor of said warehouse fell through, and goods, wares, and merchandise of said firm of W. W. Montague & Co. then stored therein fell into said excavation, and were damaged thereby in the sum of one thousand dollars."

On the 28th of May, thereafter, W. W. Montague & Co. demanded from defendant that he settle and pay the damage, which he promised to do as soon as the damages should be fully ascertained.

Thereafter, about June 15, 1887, W. W. Montague & Co. and the defendant agreed upon a compromise of the said claim for damages, whereby defendant was to pay one hundred dollars for certain tin plate which defendant should take, and for certain labor in boxing it, and was to take away certain rivets, and sort the same, and return such as could be sorted and placed in as good condition as they were in before the damage occurred, and then were to pay all damage to the firm for the rivets which should not be so returned; that previous to said agreement, the said firm delivered to defendant and defendant received the tin plate which he was to have for his own use, and also all the rivets which had been damaged to be sorted; that some rivets were sorted

by defendant and returned, but some were so unskillfully
sorted that the said firm refused to receive and accept
them under the agreement; that the residue have never
been sorted or returned; that the rivets were so dam-
aged as to be of no value as rivets whatever, and that
before the damage they were worth $520; that defend-
ant has not paid the $520 damage, or the said $100 for
said tin, or any part of either sum, and the whole is due
and unpaid.

The contention that the complaint does not state facts
sufficient to constitute a cause of action is based princi-
pally upon the claim that the action is for damages result-
ing from excavating upon an adjoining lot; and appellant
contends, that under the circumstances stated, defend-
ant is not liable for injury to the building or goods of
W. W. Montague & Co.  It does not appear that the
land unburdened by the building would have fallen in
because of the excavation, and want of notice is not
averred, but on the other hand, knowledge of the ex-
cavation is shown.

And on the theory that the action is for the breach of
an oral contract to pay the damage, it is contended there
is no consideration for such promise.

Both these propositions are sufficiently answered by
the suggestion that there is a distinct charge in the
complaint that defendant not only excavated on the ad-
joining lot, but also excavated and removed the earth
from under the building, thereby causing it to fall.  It
is not a question, therefore, of liability for an excava-
tion made by a coterminous owner upon an adjacent
lot.  The action is clearly for the breach of the oral
agreement to take certain tin and pay certain expenses
and damages, and the previous recitals are simply mat-
ters of inducement.  In this view, the uncertainty spe-
cified does not exist; nor are there several causes of
action united in the complaint.  The agreement of com-
promise specifies several distinct items or payments to
be made, but they do not constitute different causes of

action.   I think, therefore, the demurrer was properly overruled.

The court having found for the plaintiff, defendant applied for a new trial, which having been refused, he appeals from the judgment and order.

It appears from the evidence that prior to the commencement of the excavation, defendant notified W. W. Montague & Co. of the intended excavation, and of the agreement between defendant and Mills to erect a party-wall which would render it necessary to remove one side of the warehouse; also that the building extended some eight inches upon defendant's lot.   Plaintiff, who was then managing for W. W. Montague & Co., objected, and pointed out the danger to the building and goods; defendant assured him that he would move the goods, and do everything necessary to prevent injury and inconvenience to W. W. Montague & Co., whereupon plaintiff, as agent, consented to the work being done.   After the work had proceeded for some time, plaintiff noticed that the excavation was deep and extended under the building, and called defendant's attention to the danger.   Defendant then agreed to stop work at the point of danger, but did not, and in consequence the bank caved and the building gave way, and the damage resulted.

These facts, I think, take the case entirely out of the rule laid down in section 832 of the Civil Code.

There was a consideration for the promise on the part of defendant, in that Mills, the owner of the building, authorized the erection of a wall on the line for a party-wall, and that it was necessary to dig under the warehouse and remove one of its walls.

And then the agreement to cease work would of itself excuse plaintiff's assignors from shoring up their own building.

Appellant contends that the evidence does not justify the finding that defendant promised that he would settle and pay the damage.

As to the tin plate, Dunton's testimony seems quite sufficient, and in fact hardly controverted by defendant,

except as to the delivery of the tin to him. As the testimony on this point is conflicting, we must accept the evidence which sustains the finding. I think this, including Dunton's evidence in rebuttal, shows a delivery.

As to the rivets, there is very little except the testimony of Dunton, and that is not as definite as it might be.

This inquiry, however, must commence at the beginning. Niles, aware that he was attempting something which required the assent of plaintiff's assignors, had promised to so conduct the work as to save them from any inconvenience. As soon as he saw the condition after the cave, according to the witnesses Ford and Hanes, he said he would make it all right; that he would make it satisfactory; would fix it, whatever the damage was.

Dunton seems to have been under the impression that Niles was to take the rivets and pay for them. Such is not the allegation in the complaint, nor the statement in the findings. Except the confident assumption of the witness, I find no evidence of any such arrangement. It appears from this testimony, as I think is substantially averred and found, that the agreement was, that plaintiff would waive damages as to such rivets as would be sorted, and defendant would, after his attempt to sort them, pay whatever the damage to them might be. This did not make Niles the owner of the rivets, and if they were worth anything in their damaged condition, Niles would not be charged with their full value. I understand plaintiff in his testimony to admit that they were worth one hundred dollars. In that case, the amount of damage found was excessive in just that amount.

The other specifications of insufficiency need not be discussed. They are either practically answered by what has already been said or are immaterial.

I think there is evidence which tends to prove that notwithstanding the contract with Mendoza, defendant still continued to manage and control the work of excavation; and further, that under the peculiar circum-

stances of this case defendant would remain liable for damage resulting from the excavation.

I think the judgment should be reversed, unless plaintiff, within twenty days after filing the *remittitur*, shall stipulate to a reduction of one hundred dollars on the judgment, in which case the judgment so modified should be affirmed.

Belcher, C., and Vanclief, C., concurred.

For the reasons given in the forgoing opinion, the cause is remanded, with instruction to the court below to modify the judgment, by allowing to the plaintiff the sum of $520 instead of $620, with interest thereon from December 12, 1887, with costs of suit, if the plaintiff shall, within twenty days after filing the *remittitur*, stipulate that such reduction be made; but if he does not so stipulate, the court is directed to set aside the judgment and order a new trial.

Paterson, J., Harrison, J., Garoutte, J.